## Lavery *versus* The Commonwealth.

The Act of May 1st 1861 (P. L. 682), providing that certain offences may,. at the election of the defendant, be tried by a justice of the peace and six jurors, is not in conflict with the sixth and tenth sections of the Bill of Rights.

November 28th 1882.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Crawford county :* Of July Term 1882, No. 114.

This was, in the court below, a certiorari to a justice of the peace.   The transcript of the justice of the peace showed that Lavery was arrested for assault and battery upon the complaint of one Mahoney.   When brought before the justice, the complaint was read to Lavery, who pleaded not guilty, and demanded to be tried by a jury of six men, as provided by the Act of May 1st 1861 (P. L. 682), extended to Crawford county by the Act of April 1st 1863 (P. L. 215).

The justice having written down the names of eighteen men, good and lawful citizens of the Second Ward of the city of Meadville, and having the qualifications of electors therein, the prosecutor and attorneys being present, the complainant struck out one, and the defendant struck out one, and so on until six names remained, none of them of kin to defendant or prosecutor ; whereupon the justice issued a venire, and caused to be summoned the said six jurors, who, with one exception, appeared at the time fixed for trial, and a talesman was summoned from the by-standers, whereupon the trial proceeded.

The jury rendered a verdict of guilty, and the justice sentenced the defendant to pay a fine of $5, with the costs of suit, and to stand committed until the sentence should be complied with.

The defendant thereupon obtained a certiorari from the Common Pleas and filed the following exceptions to the proceedings before the justice :—

1. That the justice had no jurisdiction to try the said cause.

2. That the record shows that the trial was had before six men acting as jurors ; whereas, the defendant was entitled to a trial by a jury of twelve lawful jurors, duly sworn.

3. That the justice's return does not show that any indictment was found against the defendant, and no indictment was found against him.

4. That the offence charged against the defendant was assault and battery, which is an indictable offence, but the proceedings had in the case were upon a complaint in the nature

[Lavery v. Commonwealth.]

of an information and are expressly forbidden by the constitution of the state.

5. That the Act of Assembly under which the proceeds before the justice of the peace were had in this case is unconstitutional and void.

The court, CHURCH, P. J., delivered the following opinion.— "The record in this case shows that the plaintiff in error and defendant before the justice of the peace, was arrested on the 24th of October 1881, upon the complaint of Jeremiah Mahoney, charging him with having committed an assault and battery upon him, the complainant. The defendant was arrested and brought before the justice of the peace. The complaint was read aloud to him in his hearing and he pleaded not guilty, and demanded to be tried before the justice and a jury of six men ; whereupon the justice proceeded in accordance with the Act of the 1st of May 1861, issued his venire, organized a court as provided by that Act and tried the defendant, and the verdict was guilty.

Upon the defendant's conviction and sentence he removed the proceedings to this court for reversal, and now assigns for error that the Act of the 1st of May 1861 is unconstitutional and therefore void in that it deprives him of the common law trial by jury.

The only question, therefore, is whether the Act of the 1st of May 1861, is constitutional or not. It is an act entitled " An Act to change the mode of criminal procedure in Erie and Union counties." It was approved May 1st 1861, and by Act of April 1st 1863, it was extended to Crawford county, and was subsequently extended to various counties throughout the Commonwealth, until probably one-half or two-thirds of the counties have it in operation within their borders.

Judge COOLEY, in his treatise on Constitutional Limitations, says : " It must be evident to any one that the power to declare a legislative enactment void is one which the judge, conscious of the fallibility of the human judgment, will shrink from exercising in any case where he can conscientiously and with due regard to duty and official oath decline the responsibility. The legislative and judicial are co-ordinate departments of the government, of equal dignity ; each is alike supreme in the exercise of its proper functions and cannot directly or indirectly, while acting within the limits of its authority, be subjected to the control or supervision of the other without an unwarrantable assumption by that other of power which by the constitution is not conferred upon it. The constitution apportions the powers of the government but it does not make any one of the three departments subordinate to another when exercising a trust committed to it. The courts may declare legislative enactments

5 OUTERBRIDGE—36

[Lavery *v*. Commonwealth.]

unconstitutional and void in some cases, but not because the judicial power is supreme in degree or dignity to the legislative. Being required to declare what the law is, in the cases which come before them, they must enforce the constitution as a paramount law whenever a legislative enactment comes in conflict with it. But the courts sit not to review or revise legislative action but to enforce the legislative will; and it is only where they find that the legislature has failed to keep within its constitutional limits that they are at liberty to disregard its action; and in doing so they only do what every private citizen may do in respect to the mandates of the courts when judges assume to act and render judgments and decrees without jurisdiction. In exercising this high authority the judges claim no judicial supremacy; they are only the administrators of the public will. If an act of the legislature is held void, it is not because the judges have any control over the legislative power, but because the will of the people, which is therein declared, is paramount to that of their representatives expressed in any law."

Again. "In declaring any law unconstitutional a court must necessarily cover the same ground which has already been covered by the legislative department in deciding upon the propriety of enacting a law, and they must indirectly overrule the decision of that co-ordinate department. The task is therefore a delicate one and only to be entered upon with reluctance and hesitation. It is a solemn act in any case to declare that the body of men to whom the people have committed the sovereign function of making the laws for the Commonwealth have deliberately disregarded the limitations imposed upon its delegated authority and usurped power which the people have been careful to withhold: and it is almost equally so when the act which is to be adjudged unconstitutional appears to be chargeable rather to careless and improvident action or error in judgment, than to intentional disregard of obligation. But the duty to do this in a proper case, though at one time doubted and by some persons persistently denied, it is now generally agreed that the courts cannot properly decline, and in its performance they seldom fail of proper support if they proceed with due caution and circumspection and under a proper sense as well of their own responsibility as of the respect due to the action and judgment of the law-makers."

The author further says: " It has been said by an eminent jurist that when courts are called upon to pronounce the invalidity of an act of legislation passed with all the forms and ceremony requisite to give it the force of law, they will approach the subject with caution, examine it in every possible aspect and ponder upon it as long as deliberation and patient attention can hrow any new light upon the subject, and never declare at

statute void unless the nullity and invalidity of the Act are placed in their judgment beyond reasonable doubt.   A reasonable doubt must be solved in favor of the legislative action and the act be sustained."

"The question of whether a law be void for its repugnance to the Constitution is at all times a question of much delicacy which ought seldom, if ever, to be decided in the affirmative in a doubtful case.   The court, when impelled by duty to render such a judgment, would be unworthy of its station, could it be unmindful of the solemn obligation which that station imposes. But it is not on slight implication and vague conjecture that the Legislature is to be pronounced to have transcended its powers and its acts be considered void.   The opposition between the Constitution and the law should be such that the judge feels a clear and strong conviction of their incompatibility with each other."

In the light of what has been so ably said, we approach this Act of 1861.   It provided among other things that upon the arrest of the defendant for certain crimes therein defined (the lower grades of misdemeanors and some of the lower grades of felonies) the justice, upon the demand of the defendant and not otherwise, but only on the demand of the defendant, constitutes a court to which he subjects the defendant by calling a jury of six and trying the defendant in due course of common law.

In this connection it is to be borne in mind that the Act was passed in 1861, and it has therefore been in operation in at least two counties of the Commonwealth for over twenty-one years, and in many counties for various terms, the last legislation being about ten years ago.   The fact that the constitutionality of the Act of Assembly has not been called in question heretofore, and has not received from the highest tribunal of the Commonwealth any adjudication, we think ought to be at least persuasive evidence that the Act is not in conflict with the Constitution of the state.

It is alleged that it is in conflict with the sixth section of article 1 of the Bill of Rights.   " Trial by jury shall be as heretofore and the right thereof remain inviolate," and the tenth section of the same article, " no person shall for any indictable offence be proceeded against criminally by information, except in cases arising in the land and naval forces, or in the militia when in actual service, in times of war or public danger, or by leave of the court for oppression or misdemeanor in office.   No person shall for the same offence be twice put in jeopardy of life or limb ; nor shall private property be taken or applied to public use without authority of law and without just compensation being first made or secured."

If it were necessary for a determination of the case it might possibly well be argued that when the Constitution of 1873 said that "trial by jury shall be as heretofore," "heretofore" might mean before the adoption of the Constitution of 1873, not before the Constitution of 1776, 1790 or 1838, but before the Constitution of 1873. This Act of Assembly was in operation in 1861, twelve years prior to the adoption of the Constitution of 1873. Hence, in technical strictness, permission to a justice of the peace to try an offence before a jury of six in accordance with that Act of Assembly would leave trial by jury as heretofore : that is, prior to the adoption of the Constitution of 1873. I do not think it necessary, however, to strain the point of construction that far. It is to be borne in mind that this jury of six can only be invoked when the defendant himself demands it.

Judge TRUNKEY, in the case of the Commonwealth *v.* Saal, 10 Philadelphia Reports, when he was on the Common Pleas Bench of Mercer county, in considering the Act of 1871, known as the Mercer County Liquor Law, decided that upon the compulsory feature of the sixth section of that Act wherein either party could demand a jury trial, and against the protest, perchance of the defendant, that so much of that sixth section was unconstitutional ; but he expressly said : " this decision does not interfere with the right of the defendant to plead guilty before a justice or demand a trial by a justice and six persons. When he does so the justice will proceed in like manner as in other criminal cases wherein jurisdiction has been given to the justice for final jurisdiction at the request of the defendant. But when the defendant refuses to plead and refuses a trial before a justice, then the justice will hear the case and if cause appear hold him to answer at the next term of the Court of Quarter Sessions, as in other criminal cases."

If trial by jury and proceeding by information, as this is called, is a constitutional right, why is it not a right that a defendant may waive ? A defendant may waive a constitutional provision in his favor. Section 10 of Art. I, of the Bill of Rights, says : " No person shall for the same offence be twice put in jeopardy of life or limb." A defendant convicted of an offence who applies for a new trial and receives it, waives the privilege of section 10. The defendant has volunteered to put himself in jeopardy of life and limb. He is tried twice for the same offence and it is done with his consent. Section 9 says : " In all criminal prosecutions the accused hath a right to be heard by himself and his counsel," and so on. If he pleads guilty to an indictment he waives that privilege, as also the privilege of a trial by jury according to the course of the common law or any other law. And further, by section 9, " he has a right

to meet the witnesses face to face" " and to have compulsory process for obtaining witnesses in his favor and in prosecutions by indictment or information a speedy public trial by an impartial jury of the vicinage." Very many times in the trial of a cause depositions are taken and the witnesses are not present in court —so the testimony taken in a former trial is read against him upon a second trial. It is done by consent of the defendant, and so far it is a waiver by the defendants of the privileges of the Bill of Rights. " The defendant is also entitled to a speedy public trial by a jury of the vicinage" and he applies for a continuance—it may be for one, two or three terms—and does not demand to have a speedy public trial. Does he not, then, waive a privilege of the Bill of Rights?

I might enumerate many other cases wherein individuals have waived; where they conceived it to be for their own benefit the privileges of the Bill of Rights and the provision of the Constitution.

I think this Act of Assembly wherein it gives this defendant the right, if he so elects and demands, to be tried before a justice and jury of six, without the delay and expense of a trial in court, is perfectly legitimate and not in violation of any constitutional provision.

It is said that the defendant's consent cannot give the court jurisdiction of an offence. That is very true; but it is not consent that gives jurisdiction in this case. It is the Act of Assembly that gives jurisdiction and the justice allows that Act of Assembly to operate in the defendant's favor upon his own personal demand. The suggestion that consent cannot give the court jurisdiction is also to be taken with a grain of allowance. Courts do sometimes obtain jurisdiction by consent and make decrees that are enforced, and the jurisdiction of the court would be adhered to. For example, the Common Pleas and Orphans' Court have each jurisdiction over the proof of contracts of decedents and partitions of decedents' estates. In some, at least, of these cases, a party may and does choose his own forum, and hence jurisdiction or the right of making a decree is, to some extent at least, dependent upon choice or consent. So with the equity side and common law side of the court. A suitor proceeds on the equity side of the court where the common law side of the court has jurisdiction, and if no objection by the opposite prrty, or by the court itself is interposed, their decrees are legitimate and have full force. Hence, it cannot be exactly true in the broad acceptation of the term that consent cannot give jurisdiction. However, in the case before us it is not consent but the Act of Assembly which gives jurisdiction.

In 1858 Judge McClure, in the case of the Commonwealth v. Shaw, in the Quarter Sessions of Allegheny county, decided

[Lavery v. Commonwealth.]

in a felony that the defendant could not waive (when a juror was withdrawn) his right to the whole jury of twelve, and allow a verdict to be taken by eleven jurors. But the case in hand is to be distinguished from that one for a variety of reasons and more particularly in view of this Act of Assembly, enacted for the benefit of an accused, and of which the defendant takes advantage himself, of his own free will and without compulsion. He could not be called upon to accept its provisions, but when he does so he waives the constitutional right of having proceedings commenced against him by indictment found by the Grand Jury and to be passed upon by twelve jurors. He waives these rights just the same as when he pleads guilty he waives the right to have the witnesses appear in court, or when he applies for a new trial he waives the right of the ninth section of the Bill of Rights.

I cannot, therefore, conceive that this Act of Assembly is unconstitutional in any sense or respect, and therefore the exceptions are overruled and judgment and sentence is affirmed.

Lavery thereupon took this writ of error, assigning for error, the overruling of his exceptions to the proceedings of the justice, and the affirmance of the judgment and sentence of the justice.

*Humes* (*Frey* with him), for the plaintiff in error.—The Act under which the defendant was tried before a justice and jury of six is unconstitutional because it provides for the trial of indictable offences without indictment, and simply upon information or complaint, which is forbidden by section 10 of Art. I of the Constitution. Again, it is in violation of art. I, section 6, which provides that trial by jury shall be as heretofore. The Act gives the justice on a trial by six jurors the same power to sentence to imprisonment as the Court of Quarter Sessions would have, on a trial by twelve jurors,—which is clearly illegal. The defendant here did not waive his rights, as he might have done had he pleaded not guilty. A man cannot by invoking an unconstitutional act give power to a tribunal which the legislature was not authorized to create, or prejudice his rights to a legal trial. Proceeding by indictment and trial by jury are the two ancient strong guards which the legislature cannot infringe.

*William R. Bole* and *McCloskey & Wescott*, for defendant in error.

The opinion of the court was delivered December 11th 1882.

PER CURIAM. This judgment is affirmed upon the opinion of the learned judge in the court below.

Judgment affirmed.