Opinion by
 

 Keller, P. J.,
 

 A true bill of indictment, in three counts, was returned against Anna Kramer, charging her with violating the laws regulating the possession, sale, etc., of alcoholic liquors (Act of November 29, 1933, Sp. Sess. P. L. 15, and its amendments).
 

 On September 12, 1940, she was arraigned in court and pleaded ‘not guilty’; and the same day, pursuant to the Act of June 11, 1935, P. L. 319, she signed and filed, with the consent of the court, the district attorney, and ,her attorney of record, a waiver in writing of her right to a trial by jury, and elected to be tried by a judge without a jury according to law.
 
 [1]
 

 
 *93
 
 Accordingly the trial proceeded before Judge Alessandroni without .a jury. At the close of the Commonwealth’s case, the defendant demurred to the evidence on the ground that the allegata and probata did not agree. This having been overruled, the defendant offered her testimony, wherein she admitted the possession of the liquor testified to by the Commonwealth’s witnesses. After hearing the evidence on both sides, the trial judge rendered a general verdict of guilty as indicted, in accordance with the procedure prescribed in the second section of the Act of 1935, supra. A motion for a new trial was refused and sentence was pronounced. Defendant appealed to this court.
 

 The appeal raises two questions: 1 — The constitutionality of the Act of June 11, 1935, P. L. 319, which permits the waiver of trial by jury in certain criminal cases. 2 — Was there such a variance between the indictment and the evidence as to require the demurrer to the evidence on that ground to be sustained?
 

 1
 
 — The
 
 Act of 1935 is not unconstitutional.
 

 It is proper to note that the constitutionality of the Act of 1935 was not raised or questioned in the court below, either in the motion for new trial or elsewhere. Section 2 of the Act provides,
 
 inter alia,
 
 that the “said trial judge ,may, after hearing the case, order the withdrawal or waiver of trial by jury withdrawn, and order and direct that the case be tried before a jury.” Had the question been raised in the lower court, the trial judge might have ordered the withdrawal of the waiver of trial by jury and directed that the case be tried before a jury. By such inaction defendant may have lost the right to raise the question now. See
 
 Com. ex rel. Ross v. Egan,
 
 281 Pa. 251, 126 A. 488. However, we
 
 *94
 
 need not pass on that question for we are of opinion that the Act is constitutional.
 

 The clauses of our Constitution, which appellant claims were violated are the sixth and ninth sections of Article i, (Bill of Bights), as follows:
 

 "Sec. 6. Trial by Jury.
 
 Trial by jury shall be as heretofore, and the right thereof remain inviolate.”
 

 "See. 9. Rights of Accused in Criminal
 
 Prosecutions. In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to meet the witnesses face to face, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land.”
 

 As bearing on the construction to be given these sections, the appellant also cites Article v, ,sec. 27, as follows :
 

 "Sec. 27. Litigants may Dispense with Jury Trial.
 
 The parties, by agreement filed, may, in any civil case dispense with trial by jury, and submit the decision of such case to the court having jurisdiction thereof, and such court shall hear and determine the same; and the judgment thereon shall be subject to writ of error as in other cases.”
 

 We have given all these clauses full and careful consideration and are of opinion that they do not require us to hold the Act of 1935, supra, to be unconstitutional.
 

 We will take up the sections in order.
 

 (1) What is the effect of the provision, “Trial by jury shall be as heretofore, and the right thereof remain inviolate”? This clause of the Constitution appeared
 
 *95
 
 verbatim in the Constitutions of 1838 (Art. ix, see. 6) and 1790 (Art. ix, sec. 6). The corresponding provision in the Constitution of 1776 was found in “Clause Eleventh” of the
 
 Declaration of
 
 Rights,
 
 [2]
 
 and “Section the Twenty-fifth” of the
 
 Plan or Frame of Government,
 
 to wit:
 

 “Eleventh: That in controversies respecting property, and in suits between man and man, the parties have a right to trial by jury, which ought to be held sacred.......
 

 “Section the Twenty-fifth. Trials shall be by jury as heretofore ;And it is recommended to the legislature of this state, to provide by law against every corruption or partiality in the choice, return or appointment of juries.”
 

 The eleventh clause, of the Constitution of 1776, above quoted, is limited to “controversies respecting property” and “suits between man and man,” which are civil causes. But the twenty-fifth section of the same Constitution, and section 6 of Article i of the Constitution of 1873 [Art. ix, sec. 6 of the Constitutions of 1790 and 1838] are general, and the ‘Trials by Jury’ referred to therein apply to both civil and criminal cases.
 

 It is to be noted, however, that it is the
 
 right
 
 to a trial by jury which is to remain inviolate in the Constitutions of 1790, 1838 and 1873; and it is the
 
 right
 
 of the parties in a civil action to a trial by jury, (which ought to be held sacred), which was secured under the Eleventh Clause of the Constitution of 1776. Most civil
 
 rights
 
 can be waived by the interested parties, except where the public policy of the Commonwealth is declared to be opposed to such waiver.
 
 *96
 
 The privilege of waiving this right by the parties to
 
 civil
 
 actions, without any allowance by the law-making body or the consent of the court, was specifically secured by section 27 of Article v of the present Constitution above-quoted, which there appears for the first time in constitutional form, and definitely makes certain, what was before inferable by implication. Voluntary arbitration of civil actions, in which the award or report of the referees to whom the case was submitted had the same effect as a verdict given by twelve men, was recognized as early as 1705 (Act of January 12, 1705, 1 Sm. L. 50) ; and compulsory arbitration in civil cases was provided for by the Act of June 16, 1836, P. L. 717, secs. 8 to 38. See also,
 
 Katakura & Co. v. Vogue Silk Hosiery Co.,
 
 307 Pa. 544, 161 A. 529.
 

 (2) We come, then,
 
 to
 
 the clause
 
 relating to
 
 criminal prosecutions. In our present Constitution — and also in the Constitutions of 1790 and 1838 — this reads,
 
 [3]
 
 “In all criminal prosecutions the accused
 
 hath a right
 
 to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to meet the witnesses face to face, to have compulsory process for obtaining witnesses in his favor, and in prosecutions by indictment or information,
 
 [4]
 

 a speedy public trial by an impartial jury of the vicinage;
 

 The corresponding Ninth Clause in the Constitution of 1776, was in this form: “That in all prosecutions for
 
 *97
 
 criminal offenses, a man
 
 hath a right
 
 to be heard by himself and his council, to demand the cause and nature of his accusation, to be confronted with the witnesses, to call for evidence in his favor,
 
 and a speedy public trial, by an impartial jury of the country, without the unanimous consent of which jury he cannot be found guilty.”
 

 The reference to the ‘jury’ in the ninth clause and in the twenty-fifth section of the Constitution of 1776, before quoted, evidently related back, to the Frame of Government of the Province of Pennsylvania (May 5, 1682), which is found in'the “Charter to William Penn and Laws of the Province of Pennsylvania” published in 1879, under the direction of John Blair Linn, Secretary of the Commonwealth, often referred to as “The Duke of Yorke’s Book of Laws,” because they constitute the first part of the book. On page 100 of this volume is found the following:
 

 “Trial by jury.
 

 “Eight.
 
 That all trials shall be by twelve men, and as near as may be peers or equals, and of the neighborhood, and men without just exception. In cases of life, there shall be first twenty-four returned by the sheriff for a grand inquest, of whom twelve at least shall, find the complaint to be true; and then the twelve men or peers to be likewise returned by the sheriff shall have the final judgment. But reasonable challenges shall be always admitted against the said twelve men or any of them.”
 

 We have perhaps devoted more time than was necessary to the Constitutions of 1776, 1790 and 1838, but this was done in the hope of shedding some light on the meaning to be given the appropriate clauses in our
 
 present
 
 Constitution for it is the latter which the statute under consideration must violate, if it is to be declared unconstitutional.
 

 We find that a jury trial, as applied to a criminal
 
 *98
 
 prosecution, in the early days of this Commonwealth, whether as a province or state, was a public trial on an
 
 indictment,
 
 returned as a true bill by at least twelve members of a grand inquest, held before a jury composed of twelve men of the
 
 vicinage or
 
 neighborhood,— selected out of a panel summoned by the sheriff — who must have unanimously agreed before the accused could be found guilty. See
 
 Wellitz v. Thomas,
 
 122 Pa. Superior Ct. 438, 185 A. 864.
 

 It was the
 
 right
 
 to such a trial that was secured to the inhabitants of this Commonwealth by the constitutions above referred to.
 

 But certain waivers of, or departures from, some of the incidents of such a trial were recognized at common law, or have been authorized by statute, which have been held not to be violative of the provisions of the constitution relating to jury trials.
 

 For example, a defendant accused of crime could always waive a trial and plead guilty. So, too, he could demur to the Commonwealth’s evidence — after his plea was entered and the jury was sworn,
 
 Com. v. Robinson, Pent’s Appeal,
 
 317 Pa. 321, 323, 176 A. 908 — the effect of which was to admit the facts proved by the Commonwealth, discharge the jury and submit the case to the trial judge to find the defendant guilty or not guilty in accordance with the application of the law to the facts so admitted.
 
 [5]
 
 The Criminal Code of March 31, 1860, P. L. 382, sec. 74, provided that on a plea of guilty to an indictment for murder, the
 
 court should proceed by examination of witnesses to determine the degree of the crime
 
 — whether murder in the first or second degree — and to give sentence accordingly; and section 75, as amended by Act of May 14, 1925, P. L.
 
 *99
 
 759, which gave the jury the right to determine whether a defendant convicted of murder in the first degree should be sentenced to death, or to undergo life imprisonment, also authorized the
 
 court,
 
 in pleas of guilty, where it determined the crime to be murder in the first degree, to impose sentence of death or imprisonment for life, at its discretion. These provisions have been upheld by our Supreme Court:
 
 Com. v. Shawell,
 
 325 Pa. 497, 191 A. 17. The provision that the trial jury must consist of
 
 twelve men,
 
 which in the early judicial history of the Commonwealth was held to be mandatory
 
 (Doebler v. Com.,
 
 3 S. & R. 237) was relaxed in later days so as to permit a verdict by
 
 eleven
 
 jurors to stand where one of the jurors became ill, and the trial proceeded by agreement of the defendant and the Commonwealth.
 
 (Com. v. Beard,
 
 48 Pa. Superior Ct. 319;
 
 Com. v. Hawman,
 
 48 Pa. Superior Ct. 343-4;
 
 Com. ex rel. Ross v. Egan,
 
 281 Pa. 251, 126 A. 488). And in
 
 Lavery v. Com.,
 
 101 Pa. 560, the conviction of a defendant on the charge of assault and battery, tried before a justice of the peace and a jury of
 
 six
 
 men — where he had elected to be so tried, under the provisions of the Act of May 1, 1861, P. L. 682 — was sustained and held not to be in conflict with the sixth and ninth sections of the Bill of Rights (Art. i) in the Constitution, as he had the right to waive them.
 

 So too, the original provision as to a jury of twelve
 
 men
 
 was qualified by the Act of April 10, 1867, P. L. 62, which directed the jurors to be taken from the “whole qualified electors,” and the Nineteenth Amendment to the Federal Constitution having extended suffrage to women, it was held in
 
 Com. v. Maxwell,
 
 271 Pa. 378, 114 A. 825, that qualified women voters were eligible for jury service. The opinion in that case by ■the present Chief Justice, gives a full history of the jury system in this Commonwealth. Since the Act of May 1, 1935, P. L. 127, alternate jurors are now au
 
 *100
 
 thorized, who can take the place of jurors who die, become ill or are discharged for legal cause. See
 
 Com. v. Fugmann,
 
 330 Pa. 4, 28-31, 198 A. 99.
 

 As previously pointed out, the obtaining of a true bill of indictment from the grand jury was an essential prerequisite to a trial by jury in a criminal prosecution within the meaning of the constitutional provisions above referred to; yet the Act of April 15, 1907, P. L. 62, which authorized a defendant to waive the finding of a true bill by the grand jury and plead guilty to an indictment prepared by the district attorney, without its presentation to a grand jury, was upheld as constitutional in
 
 Com. ex rel. [Wheeler & Stanton] v.
 
 Francies, 250 Pa. 496, 95 A. 527, Mr. Justice Stewart dissenting. See also
 
 Com. ex rel. Wheeler v. Francies,
 
 58 Pa. Superior Ct. 266, and
 
 Com. ex rel. Elliott v. Francies,
 
 58 Pa. Superior Ct. 270, opinions by Rice, P. J.
 

 During the First World War, probably because of a scarcity of jurors, trial by jury in both civil cases and criminal prosecutions was greatly curtailed in England, the source of our jury system. Following this, an attempt was made in this State to introduce a waiver of trial by jury in criminal prosecutions,
 
 without legislative authority,
 
 by having the defendant after entering a plea of not guilty, sign a stipulation in writing waiving a jury trial and requesting the court to determine the issues of fact and law involved and enter such verdict and impose such sentence as the facts and law required. The validity of this procedure came before this court in
 
 Com. v.
 
 Hall, 91 Pa. Superior Ct. 485, where following the entry of a plea and the filing of such a stipulation the trial judge heard the case and found the defendant guilty. Differing from the course taken in the present case, the defendant in that case raised the question of the constitutionality of the procedure in his motion for a new trial. The motion
 
 *101
 
 was refused (7 D. & C. 689) and defendant appealed. This court reversed. The court, speaking through Judge Porter, said, inter alia (p. 144) : “An exhaustive examination of the authorities has convinced us that the learned judge of the court beloiv was
 
 without jurisdiction
 
 to try and determine the issues of fact involved, without the intervention of a jury. As we have already stated the question of the authority of the Legislature to confer jurisdiction upon some tribunal to try the issues of fact involved in criminal proceedings, without the intervention of a jury, is not involved in this case. Until the Legislature does by statute confer jurisdiction upon the court to try issues of fact in criminal cases without the aid of a jury, the courts are without jurisdiction to so proceed. The arguments based on convenience, saving of time and money are for consideration of the Legislature. Such arguments ought not to have weight with the courts and thus induce them to usurp legislative functions.” (Italics supplied).
 

 The judgment of the Superior Court was affirmed in an opinion by Chief Justice Moschzisker, 291 Pa. 341, 140 A. 626, in which it is recognized that our constitution guarantees only
 
 the right to
 
 trial by jury, and that a
 
 right
 
 guaranteed by the constitution may be waived. But whether or not the right can be waived, was said not to be the question in that case (p. 347). Rather, it was
 
 whether the court had jurisdiction to try a criminal case without a jury.
 
 The holding was that no such jurisdiction existed and, of course, jurisdiction could not be conferred by the defendant. Great stress was laid on public policy in favor of jury trials in criminal cases in Pennsylvania and it was said that while courts may, in some cases, declare a clear change
 
 which has occurred
 
 in public policy, the legislature is the body to ordain changes in public policy, especially in matters of expediency (pp. 353, 354).
 

 
 *102
 
 The legislative action necessary to give the court jurisdiction to try a criminal case without a jury, which was lacking in
 
 Com. v. Hall,
 
 supra, has been supplied by the Act of 1985, now under consideration.
 

 Section 2 of the Act provides as follows:
 

 “When a defendant has waived trial by jury and elected to be tried by a judge without a jury, in accordance with the provisions of the preceding section,
 
 any judge of the court,
 
 in which the cause is pending wherein a waiver of trial by jury and election to be tried by a judge without a jury is filed,
 
 shall have jurisdiction to hold the trial and shall proceed to hear, try, and determine all issues of law and fact, and to render a general verdict in like manner as if the defendant had put himself upon the inquest or country for trial, and his cause were being tried before a jury,
 
 and the said trial judge may, after hearing the case, order the withdrawal or waiver’of trial by jury withdrawn, and order and direct that the case be tried before a jury.” (Italics supplied).
 

 Ih the opinion in
 
 Com. v. Hall,
 
 291 Pa. 341, 346, 347, 140 A. 626, Chief Justice Moschzisker pointed out that the Constitution of Pennsylvania “Simply guarantees the
 
 right
 
 to trial by jury,” therein differing from the Constitution of the United States, which provides in Art. in, see. 2 that the trial of criminal cases “shall be by jury.”
 

 It is important to note, moreover, that in
 
 Patton v. United States,
 
 281 U. S. 276, (1930), it was held that even under the Federal Constitution a defendant could
 
 waive
 
 a jury trial. Mr. Justice Sutherland, speaking for the court, fully discussed the history of trials by jury and held that even without a statute specifically authorizing waiver of a jury trial, it could be waived in the federal courts. He pointed out that juries were more important under the early English law, because
 
 inter alia
 
 the judge acted as counsel for the defendant,
 
 *103
 
 who was not allowed private counsel (p. 307). (See also Chitty, Criminal Law, Vol. I, *407-410). As to public policy, Justice Sutherland said (p. 306); “......public policy is not so inconsistent as to permit the accused to dispense with
 
 every
 
 form of trial by a plea of guilty, and yet forbid him to dispense with a particular form of trial by consent.”
 

 While the question certified to the Supreme Court of the United States in
 
 Patton v. United States,
 
 supra, was whether, by the consent of the defendant, a trial could continue with eleven jurors, after the twelfth juror became incapacitated to serve, the court also held that there was no difference in substance between a
 
 complete waiver
 
 and consent to be tried by a less number than twelve. That the case is considered as having settled both questions is clear from later cases. In
 
 Brown v. Zerbst,
 
 99 F. (2d) 745, certiorari denied, 305 U. S. 661, a writ of habeas corpus on the ground of denial of jury trial was refused, since it appeared that petitioner had intelligently and deliberately waived a jury trial in open court. In
 
 Jabszynski v. U. S.,
 
 53 F. (2d) 1014, certiorari denied, 285 U. S. 546, it was held that the waiver may be oral.
 

 We are not impressed by appellant’s contention that since Art. v, sec. 27, of the Constitution provides that jury trials may be dispensed with in civil cases, the maxim
 
 expressio unius est exelusio alterius
 
 compels the conclusion that the enactment of the act here considered is “specifically forbidden” by the constitution. The maxim is not of universal application but is applied only as an aid in trying to arrive at intention. See
 
 Fazio v. Pittsburgh Rys. Co.,
 
 321 Pa. 7, 11, 12, 182 A. 696, quoting from 25 R. C. L., page 981, section 229. Even if applied in this case, it would only mean that jurisdiction to try civil cases without a jury was given by the Constitution to the courts if
 
 agreed to by the litigants;
 
 whereas in criminal cases, the jurisdiction
 
 *104
 
 had to be conferred by the legislature. In speaking of Art. v, sec. 27, it was said in Com.
 
 v. Hall,
 
 supra, (291 Pa., at 348) : “This provision, which first appeared in the Constitution of 1874, significantly omits criminal cases; its evident purpose was to state how and under what circumstances
 
 the parties themselves, without permission or consent of the court, or further warrant of any kind, legislative or otherwise, might conclusively waive trial by jury; and, under the law as it then stood (and still stands), it certainly confines such conclusive waivers to civil cases.”
 
 (Italics supplied). The Constitution of 1873-4 stated, in effect, that at its date, public policy had changed so as to make it desirable to hear civil cases without a jury
 
 if the parties agreedj
 
 the legislature has now said that it has become desirable (in the years intervening between 1874 and 1935) to hear certain criminal cases in the same .manner, if a jury trial is waived in writing by the defendant, and consented to by his or her attorney of record, the court and the district attorney.
 

 This procedure furnishes all the necessary safeguards emphasized by Mr. Justice Sutherland in
 
 Patton v. United States,
 
 supra.
 

 The particular offenses charged in the indictment in this case could probably have been made punishable by the legislature without
 
 allowing
 
 a jury trial; they are offenses created by statute since the first constitutional provision as to trial by jury. See
 
 Com. v. Dietz,
 
 285 Pa. 511, 519, 132 A. 572, and cases there cited. Yet the appellant argues that the right to a trial hy jury is so fundamental that public policy will not allow her to waive it. This argument was very fully discussed in the Patton case, supra, and was there held to be without merit. Cases which somewhat fully discuss the power to waive rights are
 
 Com. v. Petrillo,
 
 340 Pa. 33, 43-46, 16 A. 2d 50;
 
 Com. ex rel. Ross v. Egan,
 
 281 Pa. 251, 126 A. 488;
 
 Com. v. Beard,
 
 48 Pa.
 
 *105
 
 Superior Ct. 319, 321-7;
 
 Lavery v. Com.,
 
 101 Pa. 560, 564-6. In
 
 Com. v. Beard,
 
 supra, (p. 324), Judge Endlich, speaking for the court below, said: “......the only possible conclusion is that the purely theoretical element of public concern, as potential to override the accused’s own free choice and render him effectually unfree even before conviction and sentence, cannot be regarded as in reality much of a factor in any case.” This and other language in the case was “fully indorsed” by Mr. Justice Sutherland in the Patton case (p. 310, 311).
 

 While not controlling it may not be amiss to refer to the statement in the Commonwealth’s brief that in Philadelphia County alone, in the three years 1938 to 1940, inclusive, 4185 bills of indictment were tried without a jury under this act, and yet its constitutionality has not previously been argued before an appellate court. This adds some weight in favor of sustaining its validity:
 
 Lavery v. Com.,
 
 101 Pa. 560, 563;
 
 Com. v. Gilligan,
 
 195 Pa. 504, 511, 46 A. 124. Cases argued in the appellate courts in which the trial was had before a judge without a jury, under the Act of 1935, are set out in the margin.
 
 [6]
 
 Defendant herself was previously so tried and convicted (13a).
 

 We are of opinion that the Act of 1935 is constitutional.
 

 (2) On the question of variance between the indict
 
 *106
 
 ment and the proof, we are of opinion that there was no such variance as to require a reversal of the judgment.
 

 The indictment contained three counts, each of which charged the commission, on April 12, 1940, of an offense in violation of the Liquor Control Act of November 29, 1933, supra, and its amendments, see 47 PS sec. 744-602.
 

 The first count charged that the defendant unlawfully “did expose and keep for sale certain alcoholic, ......liquor......containing more than one-half of one per cent of alcohol by volume, — the same not being alcohol or a malt liquor — to wit, one gallon of whiskey —she, the said Anna Kramer not being a manufacturer or a licensed importer of liquor......and not being the holder of a liquor license duly issued by the Pennsylvania Liquor Control Board”, etc.
 

 The second count charged that she “unlawfully did possess certain liquor, to wit, one gallon and more of whiskey” not lawfully acquired by her prior to January 1, 1934 and not purchased by her from a Pennsylvania Liquor store, she the said Anna Kramer not being a manufacturer, or agent or employee of the Pennsylvania Liquor Control Board, nor the holder of a sacramental wine license or of an importer’s license, and the said liquor not being alcohol or a malt liquor.
 

 The third count charged that she did unlawfully keep within the Commonwealth “certain liquor, to wit, a quantity of a certain alcoholic, spirituous ...... liquor ...... containing more than one-half of one per cent of alcohol by volume, the same not being alcohol or a malt liquor, in a certain package, container and receptacle, which said package, container and receptacle ......had not been sealed while containing that liquor with the official seal of the Pennsylvania Liquor Control Board”, etc.
 

 
 *107
 
 The only witnesses called -for‘the Commonwealth testified to having found in the residence of the defendant a one-gallon glass jug, half full of
 
 gin.
 
 It was in a drawer of the radio cabinet. They also found numerous glasses, a funnel and a hydrometer. Gin is not sold in State stores in gallon glass jugs and this container was not a State store container. Analyzed, the liquor was found to be gin, containing 49 per cent by volume of ethyl alcohol. On going to the second floor, one witness discovered a strong odor of liquor in the bath room; as they entered the premises defendant was coming down the steps from the second floor.
 

 The defendant, testifying in her own behalf, admitted having the gin in her possession, but alleged that it had been bought in quart bottles and poured by her into the glass gallon jug.
 

 Her counsel admitted that she had pleaded guilty on March 4, 1940, to a violation of the Liquor Control Act and been sentenced to thirty days imprisonment in the County prison (No. 409 December Sessions 1939), as averred in the indictment.
 

 Even if the
 
 scilicet,
 
 or “to-wit”, in the 'first two counts should be held to restrict the liquor referred to in them to ‘whiskey’, and could not be disregarded as surplusage, as to which we pass no judgment at this time, no such restriction appears in the third count, which is especially appropriate to the testimony -of the Commonwealth’s witnesses, and the conviction on that count supports the sentence imposed:
 
 Com. v. Gardner,
 
 96 Pa. Superior Ct. 450.
 

 If on a general verdict of guilty, any count will sustain the verdict and sentence, the judgment will not be reversed.
 
 Com. v. Shanklin,
 
 87 Pa. Superior Ct. 53, 56.
 

 The defendant was not surprised at the trial. She knew what liquor had been seized by the enforcement officers and admitted possessing the gin. She can pro
 
 *108
 
 tect herself on any future indictment for the same offense by showing that the two offenses were identical, on a plea of autrefois convict:
 
 Com. v. Speiser,
 
 79 Pa. Superior Ct. 469, 473.
 

 The assignments of error are overruled. The judgment is affirmed and it is ordered that the defendant appear in tlie court below at such time as she may be there called and that she be by that court committed until she has complied with the sentence or any part of it which had not been performed when the appeal in this case was made a supersedeas.
 

 [1]
 

 “That in all criminal eases, except where a sentence of death or imprisonment of ten years or more may be imposed, the defendant shall have the privilege, with the consent of his attorney
 
 *93
 
 of record, the judge and the district attorney, to waive trial by jury. Such waiver must be in writing, signed by the defendant, and shall operate as an election by the defendant to be tried by a judge without a jury,” Act of June 11, 1935, P. L. 319, sec. 1.
 

 [2]
 

 The Constitution of 1776 is made up of (1) a Declaration of Rights and (2) a Plan or Frame of Government. In speaking of a ‘clause’ of the Constitution of 1776 we refer to the former; of a ‘section,’ to the latter.
 

 [3]
 

 Leaving out certain matters not essential to this case.
 

 [4]
 

 “Information” is used here in the technical sense employed in Art.
 
 j,
 
 sec. 10 of the Constitution, and not as meaning the ‘complaint,’ which is
 
 the
 
 starting point of the usual prosecution. See
 
 Com. ex rel. v.
 
 Francies, 250 Pa. 496, 500-501, 95 A. 527;
 
 Com. v. Wilson,
 
 134 Pa. Superior Ct. 222, 228, 4 A. 2d 324; Sadler on Criminal and Penal Procedure, sec. 174, p. 227; 2 Bouvier’s Law Dictionary (Rawle’s 3d Revision) p. 1563.
 

 [5]
 

 See
 
 Hutchison v. Com.,
 
 82 Pa. 472, 479. The common law practice on demurrers to the evidence in criminal eases has been changed by the Act of June 5, 1937, P. L. 1703. See
 
 Com. v. Smith,
 
 135 Pa. Superior Ct. 174, 176-177, 5 A. 2d 383.
 

 [6]
 

 Com. v. Funk,
 
 323 Pa. 390, 186 A. 65 (1936);
 
 Com. v. Schurman,
 
 125 Pa. Superior Ct. 62, 189 A. 503 (1937);
 
 Com. v. Irvine,
 
 125 Pa. Superior Ct. 606, 190 A. 171
 
 (1937); Com. v. Grotzner,
 
 125 Pa. Superior Ct. 305, 189 A. 495 (1937);
 
 Com. v. Kalb,
 
 129 Pa. Superior Ct. 241, 195 A. 428
 
 (1937); Com. v. Haines,
 
 130 Pa. Superior Ct. 196, 196 A. 621 (1938);
 
 Com. v. Matteo,
 
 130 Pa. Superior Ct. 524, 197 A. 787
 
 (1938); Com. v. Snaman,
 
 131 Pa. Superior Ct. 383, 200 A. 106
 
 (1938); Com. v. Gregory,
 
 132 Pa. Superior Ct. 507, 1 A. 2d 501 (1938);
 
 Com. v. Richman,
 
 132 Pa. Superior Ct. 529, 1 A. 2d 578 (1938);
 
 Com. v. Weiss,
 
 142 Pa. Superior Ct. 524, 16 A. 2d 435 (1940).